# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| WALTER BUCK, | |
|---|---|
| Plaintiff, | CIVIL ACTION NO. 3:CV-10-2283 |
| v. | (JUDGE CAPUTO) |
| SWIFT TRANSPORTATION COMPANY, INC., | |
| Defendant. | |

## MEMORANDUM

Presently before the Court is the Motion for Summary Judgment (Doc. 46) filed by Defendant Swift Transportation Co. Arizona, LLC f/k/a Swift Transportation Co., Inc. ("Swift"). The instant action arises out of a motor vehicle accident that occurred in Schuylkill County, Pennsylvania when Plaintiff Walter Buck ("Buck") was rear-ended by a truck operated by Damon Hooper ("Hooper"). Swift seeks summary judgment on the basis that it is not vicariously liable for Hooper's alleged negligent conduct. Specifically, Swift argues that Hooper was not employed by Swift, but rather that he was an employee of an independent contractor. Swift also maintains that Hooper was not acting within the scope of employment at the time of the accident. Because genuine issues exist regarding the precise nature of the Hooper-Swift relationship and whether Hooper was acting within the scope of employment at the time of the accident, Swift's motion for summary judgment will be denied.

## I. Background

**A.    Relevant Factual Background**

Hooper first started driving for Swift in 2006. (*Hooper Dep.*, 13:11-21, 30:9:13.) In or about April 2007, Hooper became a mentor for Swift trainees. (*Id*. at 23:15.) During this time, Hooper would drive Swift trucks. (*Id*. at 34:14-15.)

At some point in 2008, Hooper began driving Kevin Meyer's ("Meyer") truck that Meyer leased through Swift. (*Id*. at 33:25-34:5.) Hooper received his loads from Meyer, and Meyer received his loads from Swift. (*Id*. at 36:12-14.) Meyer and Swift's arrangement was memorialized by way of a Contractor Agreement. (Doc. 46, Ex. C.) Under the Contractor Agreement, Meyer was designated as an independent contractor solely responsible for the direction and control of his employees. (*Id*.)

According to Swift's corporate designee, Victor Malchesky ("Malchesky"), Swift's records indicated that in early 2008, before the May 21, 2008 accident, Hooper became an employee of Meyer driving a truck that was leased to Swift. (*Malchesky Dep.*, 36:10-13.) Malchesky testified that it was at this time that Hooper resigned his status as a company driver and went to work as an owner/operator. (*Id*. at 37:4-13.) Hooper, therefore, was no longer considered a Swift employee according to Malchesky. (*Id*. at 36:10-13.) Hooper, however, testified that he did not separate from his employment with Swift until after the May 21, 2008 accident. (*Hooper Dep.*, 32:7-33:13.) Thus, Hooper considered himself a Swift employee at the time of the accident. (*Id*. at 13:4-7, 33:25-34:4.)

The difference between a driver being switched from a Swift driver to an owner/operator means that the driver is no longer an employee of Swift Transportation, but that he or she is an "independent contractor contracted on with Swift Transportation to operate under [Swift's] DOT authority." (*Malchesky Dep.*, 37:22-38:2.) Even after the switch in status, a driver still operated under Swift's authority and was expected to adhere to Swift's policies. (*Id*. at 38:3-8.) The driver would also be required to submit driver logs to Swift and to report any motor vehicle accidents directly to Swift. (*Id*. at 41:23-42:8, 62:2-7.) The driver would also be able to communicate with various Swift departments and receive communications from Swift about hauls through the Qualcomm system. (*Id*. at 42:16-43:14, 44:21-45:12.)

2

On May 21, 2008, Hooper was driving Meyer's truck that Meyer, an owner/operator, leased through Swift. (*Hooper Dep.*, 13:4-7, 33:1-34:4, 36:12-14.) Hooper drove the truck to a Swift terminal, at which time he dropped off the student driver he was mentoring. (*Id*. at 59:17-21.) Hooper also took a ten-hour break at the terminal, during which he slept the entire time. (*Id*. at 68:20-69:10.)

That evening after his break was over, Hooper had yet to receive his next load. (*Id*. at 69:12.) Hooper then performed a pre-trip inspection. (*Id*. at 70:3-11.) Malchesky testified that drivers are considered on-duty during the time they perform pre-trip inspections. (*Malchesky Dep.*, 49:17-19.) Finding nothing wrong with the truck, Hooper proceeded to leave the Swift terminal to go to a TA truck stop to take a shower, eat, and wait for his next load request. (*Hooper Dep.*, 66:6-13, 69:12-19, 70:3-11.) At this time, however, Hooper had still not received his load request. (*Id*. at 72:14-18.) Hooper was not hauling a trailer when he left the Swift terminal. (*Id*. at 72:6-15.)

The truck stop to which Hooper headed was no more than fifteen (15) miles from the Swift terminal. (*Id*. at 72:22-25.) On the way to the truck stop, Hooper's truck clipped Buck's trailer, causing the motor vehicle accident. (*Id*. at 77:5-10.) At the time of the accident, the weather was clear and the road was dry, but the accident occurred on part of the highway that was very dark. (*Id*. at 75:1-4.) There was hardly any traffic at the time of the accident. (*Id*. at 75:5-6.)

After the accident, Hooper first contacted Meyer to inform him of the accident. (*Id*. at 29:1.) Hooper subsequently learned from Swift that he reported the accident incorrectly. Under Swift's policies, Hooper should have reported the accident to Swift first. (*Id*. at 28:21-23.) Because the accident was reported incorrectly according to Swift's regulations, Hooper's mentor status was suspended. (*Id*. at 32:7-12, 55:12-17.) As a result, Hooper quit his employment within days of the accident. (*Id*. at 56:3-11.) Swift's records confirm that

3

Hooper voluntarily left all relationships with Swift shortly after the accident. (*Malchesky Dep.*, 36:12-13.)

**B.    Procedural History**

Buck filed the instant action in the Court of Common Pleas of Schuylkill County, Pennsylvania. (Doc. 1, Ex. A.)  On or about November 3, 2010, Swift removed the action to this Court. (Doc. 1.)  On June 27, 2013, Swift filed the instant motion for summary judgment. (Doc. 46.)  Swift argues that summary judgment in its favor should be granted because Hooper was an employee of an independent contractor and not Swift. (Doc. 47.)  Additionally, Swift asserts that the Hooper was not acting within the scope of employment at the time of the accident. (*Id*.)  Buck filed a brief in opposition to the motion for summary judgment on July 11, 2013 (Doc. 51), and Swift filed a timely reply brief on July 24, 2013 (Doc. 54.)  Oral argument was held on Swift's motion on September 12, 2013.  The motion for summary judgment is thus ripe for disposition.

## II. Discussion

**A.    Legal Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* 2D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2727 (2d ed.1983). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the non-moving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256–57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing

a genuine issue of fact for trial." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**B.    Swift's Motion for Summary Judgment**

"Under Pennsylvania law, an employer will be held vicariously liable for the negligence of his employee, provided that such acts were committed during the course and within the scope of employment." *Sabric v. Lockheed Martin*, No. 09-CV-2237, 2010 WL 569574, at *5 (M.D. Pa. Feb. 12, 2010) (citing *Joseph M. v. Northeastern Educational Intermediate Unit 19*, 516 F. Supp. 2d 424, 445 (M.D. Pa. 2007)). "[W]hen an injury is done by an 'independent contractor,' the person employing him is generally not responsible to the person injured." *Drexel v. Union Prescription Centers, Inc.*, 582 F.2d 781, 785 (3d Cir. 1978). "However, when the relationship between the parties is that of 'master-servant' or 'employer-employee,' as distinguished from 'independent contractor-contractee,' the master or employer is vicariously liable for the servant's or employee's negligent acts committed within the scope of his employment." *Id*.

In view of these principles, Swift argues that summary judgment in its favor is warranted for two reasons. First, Swift asserts that Hooper was employed by an independent contractor subject to the control and direction of the independent contractor. Second, Swift argues that Hooper was not acting within the scope of his employment at the time of the accident.

## 1. Swift-Hooper Relationship

Swift's motion for summary judgment on the basis of its relationship with Hooper will be denied.

The inquiry for determining whether a person is a servant/employee or an independent contractor focuses on the employer's degree of control over the performance of the work in question.

> In defining the distinction between an employee or servant and an independent contractor, the Supreme Court of Pennsylvania held in *Feller* that the "characteristic of the former relationship is that the master not only controls the result of the work but has the right to direct the way in which it shall be done, whereas the characteristic of the latter is that the person engaged in the work has the exclusive control over the manner of performing it, being responsible only for the result."

*Jones v. Century Oil U.S.A., Inc.*, 957 F.2d 84, 86 (3d Cir. 1992) (quoting *Feller v. New Amsterdam Casualty Co.*, 70 A.2d 299, 300 (Pa. 1950)). While the right to control the manner in which the work is to be done is the focus of the inquiry, a number of other factors should be taken into consideration in determining whether a person was an employee or independent contract: whether the person has responsibility for results only, the terms of any agreement between the parties, the nature of the work to be done, the skill required for performance, whether one employed is engaged in a distinct occupation or business, which party supplies the tools, whether payment is by time or by the job, whether the work is part of the regular business of the employer, and the right to terminate employment at any time. *Hammermill Paper Co. v. Rust Engineering Co.*, 243 A.2d 389, 392 (Pa. 1968). Nevertheless, Pennsylvania "case law confirms, that control over the work to be completed and the manner in which it is to be performed are the primary factors in determining employee status." *Shay v. Flight C Helicopter Servs., Inc.*, 822 A.2d 1, 14 (Pa. Super. Ct. 2003) (citation omitted).

"The precise nature of the relationship . . . presents a question of fact which it is the exclusive function of the jury to determine . . . except where the facts are not in dispute and

7

the evidence is direct and certain, presenting no question of credibility and leaving no sufficient ground for inconsistent inferences of fact." *Joseph v. United Workers Ass'n*, 23 A.2d 470, 472-73 (Pa. 1942); *Lutz v. Cybularz*, 607 A.2d 1089, 1091 (Pa. Super. Ct. 1992).

Based on the facts of record, there is a question as to the nature of Hooper's relationship with Swift. Specifically, Hooper testified that at the time of the accident he was a Swift driver mentor, that he believed he was employed by Swift while working under Meyer, and that he was driving a Swift-owned vehicle (leased by Meyer). Hooper also testified that he received messages regarding the availability of loads from Swift through a Qualcomm system. Moreover, after the accident occurred, Swift disciplined him by revoking his driver mentor status. Swift's corporate designee also testified that Hooper was required to submit driver logs pursuant to Swift policy and that all Swift vehicles had Qualcomm systems. On the other hand, Swift's corporate designee testified that Hooper was not considered an employee. Although at one point Hooper was a Swift employee, the corporate designee testified Hooper switched to owner/operator status prior to the date of the accident. There is also evidence of a Contractor Agreement between Meyer and Swift that defines Meyer as an independent contract. The Contractor Agreement further provides that Meyer was solely responsible for the direction and control of its employees. *See, e.g., Language Line Servs., Inc. v. Dep't of Gen. Servs.*, 991 A.2d 383, 388 (Pa. Cmwlth. 2010) ("written agreements stating that a person is hired as an independent contractor is relevant but not dispositive."); *cf. Jones*, 957 F.2d at 87 (signed agreement identifying relationship as being one of an independent contractor "is not determinative of the matter, for it is the actual practice between the parties that is crucial."). Considering the record in its entirety and noting the conflicting evidence regarding Swift's ability to direct and control Hooper's work, summary judgment on Swift's first argument relating to its relationship with Hooper is not warranted.

### 2. Scope of Employment

Swift also argues that summary judgment in this case should be granted in its favor because Hooper was not acting within the scope of his employment at the time of the accident. According to Swift, Hooper was not performing within his employment at the time of the accident since he was driving to a truck stop for personal reasons, *i.e.*, to take a shower and eat.

As set forth by the Pennsylvania Superior Court:

> A servant's conduct is within the scope of employment when "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master . . . . Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master."

*Butler v. Flo–Ron Vending*, 557 A.2d 730, 736 (Pa. Super. Ct. 1989) (quoting Restatement (Second) of Agency § 228)); *see also Aliota v. Graham*, 984 F.2d 1350 (3d Cir. 1993) (predicting that the Pennsylvania Supreme Court would follow *Butler*'s holding and adopt § 228). "'Whether a person acted within the scope of employment is ordinarily a question for the jury.'" *Butler*, 557 A.2d at 736 (quoting *Fitzgerald v. McCutcheon*, 410 A.2d 1270, 1271 (Pa. Super. Ct. 1980)); *see also Orr v. William J. Burns Int'l Detective Agency*, 12 A.2d 25, 27 (Pa. 1940). "The only exception is where the facts and the inferences to be drawn from them are not in dispute." *Orr*, 12 A.2d at 27; *see also MFS, Inc. v. DiLazaro*, 771 F. Supp. 2d 382, 456 (E.D. Pa. 2011) ("The question of whether an individual has acted within his or her scope of employment is generally one of fact for the jury to decide; however, the issue can be decided as a matter of law by the Court where the facts and inferences drawn from them are not in dispute."); *Walker v. Henkels & McCoy*, No. 05-CV-0963, 2006 WL 3762031, at *2 n.9 (M.D. Pa. Dec. 20, 2006).

Since differing inferences can reasonably be drawn regarding whether Hooper was acting within the scope of employment at the time of the accident, Swift's motion for

summary judgment will be denied. First, a reasonable jury could conclude that Hooper was acting at the time of the accident in a manner consistent with which he was employed to perform, *i.e.*, driving a truck. Conversely, however, as Hooper was driving to the truck stop without a load, the finder of fact could determine that the accident did not occur while Hooper was within the scope of employment. Additionally, a jury could determinate that Hooper was substantially within his authorized limits, as the accident occurred after he conducted a pre-trip inspection, for which he was deemed on-duty, and Hooper was traveling to a truck stop no more than fifteen (15) miles from the terminal where he conducted his pre-trip inspection. Alternatively, a reasonable juror could reach the conclusion that since Hooper was not hauling a load at the time of the accident and had yet to be assigned a new load, he was not acting substantially within his limits when the accident occurred. Lastly, a jury could find that driving to the truck stop prior to the accident was at least in part to serve Swift. Hooper testified that he was going to the truck stop to wait for his load request. On the other hand, a jury could conclude from Hooper's testimony that he was driving to the truck stop solely for personal reasons. Essentially, a jury could reasonably infer that Hooper's presence where the accident occurred was actuated, at least in part, by a desire to serve his employer. Therefore, in light of the reasonable inferences that can be drawn from the relevant evidence of record, there is a genuine issue for trial as to whether Hooper was acting within the scope of employment at the time of the accident.

### III. Conclusion

For the above stated reasons, Swift's motion for summary judgment will be denied. An appropriate order follows.

| | |
|---|---|
| September 26, 2013<br>Date | /s/ A. Richard Caputo<br>A. Richard Caputo<br>United States District Judge |